Argued June 6, affirmed July 18, 1956

HARLAND *v.* CHANDLER ET AL

300 P. 2d 412

168

*W. C. Winslow,* Salem, argued the cause for appellant. With him on the briefs was Norman K. Winslow, Salem.

*Charles Peterson,* Salem, argued the cause for respondents. With him on the brief were Robert Y. Thornton, Attorney General; C. W. Enfield, Assistant Attorney General; and Leonard I. Lindas, all of Salem.

Before WARNER, Chief Justice, and ROSSMAN, LUSK, BRAND and PERRY, Justices.

PER CURIAM.

Plaintiff brought this suit to enjoin the State Highway Commission from constructing a new section of highway approximately four and one-half miles long in Polk County, Oregon, which will constitute a part of the Willamina-Salem Highway, State Highway No. 30, and provide a shorter and more direct route than the present one from Salem to the ocean beaches. The circuit court entered a decree of dismissal, from which plaintiff has appealed.

Plaintiff alleges that he is a taxpayer and a contributor to the road funds of Oregon, and the owner of real property through which the proposed road will go. He alleges as the basis of relief that the highway of which the new construction will form a part is not a primary but a secondary highway; that the defendants sought to obtain the approval of the County Court of Polk County for the project, but such approval was refused; and that the Commission acted arbitrarily, capriciously, in bad faith, and with a bad motive and purpose, and abused its discretion in its adoption of

a resolution in which it classified the Willamina-Salem Highway as a primary highway, and in its selection of the new route, which is said to be ''not economically sound, practical, nor does it best serve the traveling public.''

The present highway from Salem to the coast runs westerly from Salem through the town of Rickreall to Dallas, thence northerly to a junction with the Salmon River Highway at Wallace Bridge, thence westerly to the ocean. The highway from Dallas, northerly to the Salmon River Highway, has heretofore been known as the Dallas-Coast Highway, and had been classified by the Commission as a secondary highway. The new section of road, designated by the Commission as the Dolph Corner-Rickreall Section of Willamina-Salem Highway, will leave the Dallas-Coast Highway at Dolph Corner, which is 2.99 miles north of Dallas, and extend in a southeasterly direction to a point on the Salem-Dallas Highway in the westerly part of Rickreall. It will be a throughway. See ORS 374.010. The Willamina-Salem Highway, as thus improved, was authorized by an act of the legislature. Oregon Laws 1953, ch 252, p 375, ORS 366.256. Selection of the precise route, however, was left to the Commission. On the attached map, the Dolp Corner-Rickreall Section is represented by a dotted line.

As is well known, much state highway construction is done today with the aid of federal funds. Under federal legislation moneys appropriated for ''secondary and feeder roads'' could only be expended where the ''projects for construction shall be selected and the specifications with respect thereto shall be determined by the State highway department and *the appropriate local officials* in cooperation with each other.'' (Italics added.) Federal-Aid Highway Act of 1950, ch 912,

Public Law 769, 81st Congress (2d session), U S Code Congressional Service 1950 (vol 1), p 846. See, also, 23 USCA § 6, and acts referred to in 23 USCA, '55 pp, § 21a-1, note.

As stated, the Dallas-Coast Highway was classified as a secondary highway by the Commission. Apparently under the assumption that for that reason construction of the Dolph Corner-Rickreall Section of the Willamina-Salem Highway was not eligible for federal aid without the approval of the "appropriate local officials," the Commission in October, 1951, addressed a letter to the County Court of Polk County asking for such approval. It was not given. Thereafter, by resolution on December 10, 1953, the Commission classified the Willamina-Salem Highway as a primary highway, leaving undisturbed the classification as a secondary highway of the portion of the Dallas-Coast Highway not included within the route of the Willamina-Salem Highway. Subsequently, the Commission applied for, and was granted, federal aid for the project.

■ Apart from the allegation that, after the Commission sought and failed to obtain the approval of the County Court of Polk County to the proposed route, the Commission classified the Willamina-Salem Highway as a primary highway, there are no allegations of fact in the complaint relating to the alleged arbitrary action of the Commission. The Commission is authorized by statute to "classify and reclassify the highways comprising the state highway system as primary and secondary highways." ORS 366.220 (2). We think it extremely doubtful that an issue can be raised as to the validity of the Commission's exercise of this power by the bald assertion that a highway which the Commission has classified as a primary highway is in fact a secondary highway, and by alleging that the Commission's action was taken in bad faith and from evil motives. It is the Commission upon which the legislature has conferred the power to classify highways, and anyone who undertakes to charge the Commission with abuse of discretion in its exercise of the power must state facts which support his accusation. Adjectives and adverbs, no matter how strong, are no substitutes for facts. Similarly, the allegation in the complaint that the proposed route "is not economically sound, practical, nor does it best serve the traveling public," can hardly be sustained as sufficient to charge an abuse of discretion. The Commission is vested with broad powers, among others, "general supervision and control over all matters pertaining to the selection, establishment, location, construction, improvement, maintenance, operation and administration of state highways." ORS 366.205 (2). The Commission administers the state highway system with the aid of skilled, expert employees of the State Highway Department. While we do not attribute infallibility either to the

members of the Commission or the employees of the department, we are of the opinion that something more than a general broadside such as we have quoted should be required in a pleading before the Commission may be brought into court to answer to a charge of bad faith and abuse of discretion. Otherwise, it might well be that the Commission would be forced to spend its time defending law suits instead of building and maintaining highways.

■ Notwithstanding these views, we have examined the record to determine whether there is merit in the plaintiff's suit, and we find none. It is not the fact, as the plaintiff claims, that at the time the Commission sought approval of the project from the County Court of Polk County it had selected the route for the new section of highway. But it would make no difference if this were the fact. It was entirely within the competence of the Commission to classify the new section of highway as a primary highway and to reclassify a portion of the Dallas-Coast Highway as a primary highway. Even had it taken this action for the purpose of qualifying the project for federal aid without the approval of the local authorities, that in itself would have been no mark of bad faith. That this was the reason for its action is by no means clear, for it would seem—though we do not decide the question—that Primary Highway Aid under federal law is not dependent on classification of highways by state authority, but rather upon the approval of the project by the federal authorities as one entitled to such aid. In this case the project was given such approval and the funds made available. The suggestion of the plaintiff that this amounted to a fraud on the federal government does not merit discussion.

■ The statute does not define "primary" and

"secondary" highways. We may assume, as counsel for the plaintiff does, that the former was intended to indicate "of first importance" and the latter "next below first in importance." The legislature has left the determination of these classifications to the Commission. Counsel for the plaintiff argue that the Commission "does not have power to declare by resolution that black is white, or that a road which is in fact a secondary highway is a primary highway." As to the former proposition we agree with counsel. As to the latter, this observation may be made: Chief Justice Hughes once said that the Constitution is what the judges say it is. Similarly, a primary highway is one so classified by the Commission. There may be circumstances in which a court would be authorized to interfere with the Commission's classification, though just what those circumstances might be does not occur to us at the moment. Certainly, nothing in the record before us tends in the slightest degree to support the claim that in the present instance the Commission abused its powers by the classification in question. That the proposed highway is important is obvious; whether it is sufficiently important by comparison with others to entitle it to be classified as primary is a question committed by the statute to the judgment of the Commission, not of the courts.

■ These observations apply with full force to the claim that the route for the new section of highway selected by the Commission is not economically sound or practical, and does not best serve the traveling public. Here again the plaintiff would have us enter upon a field reserved for the Commission. Courts are not only not authorized to decide questions of this character, they are not competent to do so. Counsel for plaintiff state in their brief that on this question "there is a wide

divergence of opinion between Mr. Baldock, chief engineer of the Highway Commission, who has had years and years of experience and who ought to be in very much better position to know than Mr. Irvin A. Cooper, an engineer called by appellant  *  *  *.'' Notwithstanding this concession, the plaintiff would have us substitute our judgment for that of the Commission and its engineer. This we must decline to do. Counsel argue that, "when people are acting from bad motives, when people are trying to get around statutory requirements," the rule on this subject should not be applied. As we find no evidence to support these charges there is no justification for making an exception of the present case.

■■ The plaintiff's objection to having a highway traverse his farm is understandable. But it is the sort of annoyance, inconvenience or hardship that the individual must occasionally suffer when modern highways are built to meet the demands of a motorized age. The Constitution preserves to the property owner the right to just compensation for property taken for a public purpose. To this, of course, the plaintiff is entitled; but he has produced no evidence which would warrant a court in interfering with the orderly administration of the affairs of the State Highway Department by enjoining construction of the proposed highway.

The decree of the circuit court is affirmed.